IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ANTHONY T. DAN, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV714 |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS COUNTY, | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

This matter is before the court on Plaintiff's Motion to Appoint Counsel (filing no. 38), Defendant's Motion to Dismiss (filing no. 39), and Plaintiff's Motion for Default Judgment (filing no. 41).

## MOTION TO DISMISS

### *I.   Background*

Plaintiff filed his Complaint in this matter on November 16, 2006. (Filing No. 1.) Defendant filed its Motion to Dismiss on December 17, 2007. (Filing No. 39.) Along with its Motion, Defendant filed a Brief in Support. (Filing No. 40.) Plaintiff did not file a response to Defendant's Motion to Dismiss.

As set forth in this court's local rules, a motion raising a "substantial issue of law" must be supported by a brief. NECivR 7.1(a)(1)(A). Additionally, a party opposing a motion to dismiss "shall file a paginated brief which concisely states the reasons for opposing the motion" within 20 days of the filing of the motion to dismiss. NECivR 7.1(b)(1)(A-B). However, "[f]ailure to file an opposing brief shall not be considered to be a confession of the motion." NECivR 7.1(b)(1)(C).

The court has carefully reviewed the documents submitted by both parties. While Defendant has submitted a Motion to Dismiss and Brief in Support, Plaintiff has not filed an opposing brief. Under the local rules of the court, the time in which to respond has passed and the Motion to Dismiss is deemed fully submitted.

## II. *Summary of Complaint*

Plaintiff filed his Complaint in this case on November 16, 2006 against the Douglas County Department of Corrections ("DCCC"). (Filing No. 1.)

In his Complaint, Plaintiff states that on February 24, 2006, DCCC Officer S. Jenkins allowed inmate Roy Hubbard to enter Plaintiff's cell "to hit [Plaintiff] in [his] jaw." (Filing No. 1 at CM/ECF p. 5.) Plaintiff states that he was seen by medical that day because the inside of his jaw was bleeding. (*Id.*)

Plaintiff further alleges that on August 5, 2006, he told DCCC medical staff that he had a doctor statement that required an ointment be applied to the staples in his head for five to seven days. (*Id.*) Plaintiff claims that DCCC medical staff ignored his doctor statement. (*Id.*) Plaintiff claims that after DCCC medical staff removed the staples from Plaintiff's head, he started to bleed and he began to have headaches and fevers. (*Id.* at CM/ECF pp. 5-6.)

Plaintiff further claims that on November 30, 2005, Plaintiff was denied "the grievance foram procedure" by director Robert Patton.[1] (*Id.* at CM/ECF p. 6.) Plaintiff states that he wrote a kite requesting "grievance forams" to Sargent Fricke on December 29, 2005, and that he wrote kites complaining of being denied a "grievance

---

[1] As Defendant notes in its brief in support of its Motion to Dismiss, because Plaintiff states in his Complaint and on his kites that he was denied "the grievance foram," it is difficult to determine whether Plaintiff is claiming that he was deprived a grievance forum or a grievance form.

foram" by case management on December 29, 2005 and December 30, 2005. (*Id.*) Plaintiff's kites state, "I need a grievance foram please." (Filing No. 1-2 at CM/ECF pp. 1-4.) Each kite states in the reply portion, "Request denied per Director Patton." (*Id.*) Plaintiff states that because he was repeatedly refused a "grievance foram," he stopped making the requests. (Filing No. 1 at CM/ECF p. 6.)

On March 23, 2006, Plaintiff submitted a kite to Director Patton asking why he was denied "a grievance foram" on multiple occasions. (Filing No. 1-2 at CM/ECF p. 5.) In response, the kite states, "[t]o my knowledge you are not being denied grievance forms. There are provisions in place to keep you from abusing the system. If you have kites stating that I am denying your right to grieve than I would be interested in seeing them." (*Id.*) Plaintiff further claims that he asked Sargent Fricke on April 3, 2006, April 7, 2006, and April 14, 2006 why he was being denied "the grievance foram procedure." (Filing No. 1 at CM/ECF p. 6.) Plaintiff states that Fricke told Plaintiff that he "was being denied by director Robert Patton." (*Id.*) Plaintiff states that the DCCC also denied Plaintiff his right to education. (*Id.*)

### III.  *Legal Analysis*

Defendant moves this court to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). Liberally construed, Plaintiff's Complaint raises the following four claims: (1) Officer S. Jenkins retaliated against Plaintiff by allowing another inmate to enter his cell and assault him; (2) DCCC medical staff provided Plaintiff with inadequate medical treatment when treating and removing staples from his head; (3) Plaintiff was denied access to education by DCCC; and (4) Plaintiff was denied a grievance procedure by DCCC staff.

### A.     *Standard of Review*

In order to withstand a motion to dismiss, a pro se plaintiff must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (overruling *Conley v. Gibson,* 355 U.S. 41 (1967), and setting new standard for failure to state a claim upon which relief may be granted). Regardless of whether a plaintiff is represented or appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-1044 (8th Cir. 2002) (citations omitted).

"When there are documents attached to the complaint, [the Court] consider[s] this material along with the allegations of the complaint." *Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007); Fed. R. Civ. P. 10(c) (stating "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### B.     *County Municipality Liability*

Douglas County is the only named Defendant in this action.[2] A governmental entity cannot be held vicariously liable for its agent's acts under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, a plaintiff must identify a governmental "policy or custom that caused the plaintiff's injury" to recover from a governmental entity under § 1983. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citations and quotations omitted). A governmental policy "involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy." *Doe v. Special Sch. Dist.*, 901 F.2d 642, 645 (8th Cir. 1990) (quotations and citations omitted). A governmental custom involves "a pattern of 'persistent and widespread' unconstitutional practices which bec[o]me so 'permanent and well settled' as to have the effect and force of law." *Id.* at 646 (citing *Monell*, 436 U.S. at 691). For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Monell*, 436 U.S. at 694.

### 1.     **Retaliation Claim**

Plaintiff's first claim alleges that Officer S. Jenkins retaliated against him by allowing inmate Roy Hubbard to enter into Plaintiff's cell "to hit [Plaintiff] in [his] jaw."

Nowhere in Plaintiff's Complaint, or in the documents attached to Plaintiff's Complaint, does he assert any factual allegations that would make it plausible that a Douglas County policy or custom was the moving force behind the alleged act of

---

[2]*See* Order on Initial Review, Filing 7, at 2 ("Construing the complaint liberally, the defendant is Douglas County, which oversees the DCCC and is responsible for its operations and policies.").

5

retaliation. Therefore, Plaintiff's claim of retaliation is dismissed for failure to state a claim on which relief can be granted.

### 2.    Medical Indifference Claim

Plaintiff's second claim alleges that the DCCC medical staff did not provide him with adequate medical treatment when caring for and removing staples from Plaintiff's head. Defendant argues that this claim should be dismissed because Plaintiff has not established that the moving force behind the action was based on a Douglas County policy or custom, and that Plaintiff has failed to establish a claim for medical indifference under the Eighth Amendment.

A prisoner-plaintiff seeking relief for claims relating to his medical care must allege that a defendant-prison official was deliberately indifferent to the plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Further, a plaintiff must allege that he had objectively serious medical needs, and that officials actually knew of, but deliberately disregarded, those needs. *Hartsfield v. Colburn* 491 F.3d 394, 396-97 (8th Cir. 2007); *Johnson v. Hamilton*, 452 F.3d 967, 972-73 (8th Cir. 2006). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Estelle*, 429 U.S. at 103-104).

Moreover, "a § 1983 claim against a municipality or supervisor, based on an alleged policy or custom, or an alleged failure to adequately train or supervise subordinates, must be dismissed if it is determined that the subordinates did not violate the claimant's constitutional rights." *Neu v. County of Benton*, No. 06-601, 2007 WL 2454127, at *6 (D. Minn., Aug. 23, 2007) (citing *Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) (where prisoner-plaintiff was unable to show that his medical care

6

was "constitutionally deficient," he could not prevail on his related claim that prison administrators did not adequately train their staff)).

The court has reviewed Plaintiff's Complaint and the attached documents, and based on the factual allegations in Plaintiff's Complaint, the court finds that Plaintiff has set forth enough facts to nudge his claims across the line from conceivable to plausible. Therefore, Defendant's Motion to Dismiss is denied with respect to this claim.

### 3. Access-to-Education Claim

Next, Plaintiff argues that he was denied the right to an education at DCCC. Defendant argues that Plaintiff's claim should be dismissed because Plaintiff has no constitutional right to education or vocational opportunities during incarceration. Defendant further contends that Plaintiff was ineligible to participate in educational activities at DCCC due to his behavior while residing at DCCC.

"Prisoners have no constitutional right to educational or vocational opportunities during incarceration." *Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir. 1992). "[H]owever, if the state provides educational or vocational opportunities to its prisoners, it cannot deny equal access to such services to all prisoners absent a rational basis." *Id.* But to prove an equal protection violation, Plaintiff has to show "that he was treated differently from similarly situated inmates at [DCCC] and that there was no rational basis related to a legitimate state purpose for the unequal treatment." *Id.* (citing *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)).

After reviewing Plaintiff's Complaint, and the documents attached to Plaintiff's Complaint, the court concludes that Plaintiff has set forth enough facts to nudge his claims across the line from conceivable to plausible. Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for denial of equal access to education is denied.

### 4.     Refusal-of-Grievance-Procedure Claim

Finally, Plaintiff claims that he was denied access to a grievance process by DCCC employees. Defendant argues that Plaintiff's claim should be dismissed because he does not have a constitutionally protected right to a particular administrative grievance procedure or to repeatedly grieve the same issue.

Liberally construed, Plaintiff is alleging an access-to-court claim. The general framework for analyzing access-to-courts claims brought by inmates is set forth in *Lewis v. Casey*, 518 U.S. 343 (1996). "[T]o succeed in an access-to-courts claim, a plaintiff must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001) (citations omitted). Additionally, an inmate must show that he has "suffered an actual injury." *Id.* (citations omitted).

After reviewing Plaintiff's Complaint, and the documents attached to Plaintiff's Complaint, the court concludes that Plaintiff has set forth enough facts to nudge his claims across the line from conceivable to plausible. Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for denial of a grievance procedure is denied.

**MOTION TO APPOINT COUNSEL**

Plaintiff seeks the appointment of counsel. (Filing No. 38.) However, the court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "'[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel.'" *Id.* (quoting *Edgington v. Missouri Dep't of Corrections*, 52 F.3d 777, 780 (8th Cir. 1995)). "The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and

the plaintiff's ability to investigate the facts and present his claim." *Id.* No showing has been made in this case. The request for the appointment of counsel is therefore denied without prejudice.

**MOTION FOR DEFAULT JUDGMENT**

Plaintiff moves the court to enter default Judgment against Defendant. (Filing No. 41.) Plaintiff argues that default Judgment should be entered against Defendant because Defendant was given an enlargement of time until December 17, 2007 to answer or otherwise respond to Plaintiff's Complaint, and that Defendant failed to meet the deadline. A review of the court's records shows that Defendant timely filed its Motion to Dismiss Plaintiff's Complaint on December 17, 2007. Accordingly, Plaintiff's Motion for Default Judgment is denied.

IT IS THEREFORE ORDERED that:

1.  Defendant Douglas County's Motion to Dismiss (filing no. 39) is granted in part insofar as Plaintiff's claim of retaliation is dismissed for failure to state a claim on which relief can be granted. In all other respects, Defendant's Motion to Dismiss is denied without prejudice to reassertion pursuant to Federal Rule of Civil Procedure 56 as set forth in this memorandum and order.

2.  Plaintiff's Motion for Appointment of Counsel (filing no. 38) is denied.

3.  Plaintiff's Motion for Default Judgment (filing no. 41) is denied.

May 6, 2008.             BY THE COURT:

                         s/ *Richard G. Kopf*
                         United States District Judge

9